PEOPLE ex rel. CONLIN v. MARTIN et al.

PEOPLE ex rel. WILLIAMS v. SAME.

(Supreme Court, Special Term, New York County. February 3, 1893.)

POLICE INSPECTORS—SENIORITY.

A police inspector whose appointment precedes the appointment of another inspector by a few minutes is entitled to seniority, though the other may have been several hours earlier in taking the oath of office.

Applications by Peter Conlin and Alexander S. Williams, respectively, for writs of mandamus against James J. Martin and others. Application of Conlin granted. Application of Williams denied.

Charles W. Dayton, for relator Conlin.
George Bliss, for relator Williams.
William H. Clark, for respondents.

LAWRENCE, J. In each of these applications the relator asked for a writ of peremptory mandamus, compelling the respondents, as commissioners of the board of police of the city of New York, to recognize and install him as chief inspector of the police force of said city from and after the 1st of October, 1892.

Section 265 of the consolidation act, (chapter 410 of the Laws of 1882) prescribes "that the police force shall consist of one superintendent of police; four inspectors of police; captains of police, not exceeding in number one to each fifty of the total number of patrolmen; sergeants, not exceeding four in number to each fifty of the total number of patrolmen," etc. Section 271 of said act provides that "sergeants of police shall be selected from among patrolmen assigned to duty as roundsmen; captains, from among sergeants; and inspectors, from among captains." Chapter 137 of the Laws of 1888 provides, among other things, that "the senior inspector shall be known as 'chief inspector,' and shall have charge of the detective bureau of the police department of said city, and in the absence of the superintendent of police shall discharge all the duties of that office, and his salary shall be $5,000 per annum, payable in the usual manner; but nothing in this section shall be construed as affecting the civil service laws now in operation in this state." It is under this amendatory law that the controversy which is the subject of determination upon these applications has arisen. It is conceded that prior to the 1st of October, 1892, Henry V. Steers was the senior inspector of the police force, and that on that day he was retired from said force; and each of the relators claims that he, at the date of the retirement of Steers, was the senior inspector, and became, under the provisions of chapter 137 of the Laws of 1888, above referred to, chief inspector, in the place of said Steers.

There is very little controversy in regard to the facts. On the 9th day of August, 1887, there were two vacancies in the office of the inspector of police, and on that day each of the relators was appointed an inspector of police by resolution of the commissioners.

The resolution appointing Peter Conlin to be inspector was passed first by the board. The resolution appointing Alexander S. Williams as inspector was then adopted, and the entry upon the records of the police commissioners shows that such was the fact. It also appears that each of the relators took the oath of office on the 10th day of August, 1887, the relator Williams taking such oath at half past 9 o'clock A. M., and the relator Conlin, at 11:40 A. M. It appears from the affidavits submitted on behalf of Conlin that on the 9th day of August, when he was appointed, he was absent, on leave, at Moriches, L. I., and that, having received a telegram informing him of his appointment, he took the first train for New York on the morning of the 10th of August, 1887; that he reported immediately upon his arrival at police headquarters, and upon so reporting was instructed by the then superintendent of police to proceed to the office of the clerk, and there take his oath of office as inspector of police, which he immediately proceeded to do. It is obvious that the resolution appointing Conlin to the office of inspector preceded in time the resolution appointing the relator Williams, and it is also obvious that the board was acting strictly within its legal powers in selecting each of the relators as an inspector. Section 271 of the consolidation act. The fact that the relator Williams was an older captain in service than Conlin did no require the commissioners to make him the senior inspector. Section 271 provides that the inspector shall be selected from among the captains, but it does not require that the commissioners shall appoint a senior captain to a senior inspectorship, nor preclude them from promoting a younger captain over an older captain to such office.

The question, therefore, which is presented in this case, is simply whether the fact that the relator Williams took the oath of office two hours and ten minutes before the relator Conlin entitles Williams to the position of senior inspector. My examination of the authorities leads me to the conclusion that the relator Williams cannot consistently make such claim. Conlin was first selected as inspector, and his appointment, so far as the commissioners were concerned, was complete upon the passage of their resolution. Marbury v. Madison, 1 Cranch, 137. Unless he committed some act, intermediate the time of his appointment and the time of taking the oath, forfeiting the office, Conlin cannot be ousted of the priority in rank which the passage of the resolution gave to him. He certainly was guilty of no laches in taking the oath of office. Section 270 of the consolidation act prescribes that "each member of the police force shall, before entering upon the duties of his office, take an oath of office, and subscribe the same, before any officer of the police department who is empowered to administer an oath." That oath was taken by Conlin on the morning succeeding the date of the resolution appointing him, and as soon as he could reach the city from Long island, where he was absent on leave. When that oath was taken, Conlin had complied with the statute, and necessarily became inspector as of the date of the passage of

the resolution. Foot v. Stiles, 57 N. Y. 399; In re Kendall, 85 N. Y. 302; Cronin v. Grundy, 16 Hun, 523; Horton v. Parsons, 37 Hun, 45. In commenting upon the cases of In re Kendall, 85 N. Y. 302, and Foot v. Stiles, 57 N. Y. 399, Finch, J., in delivering the opinion of the court in the case of People v. Crissey, 91 N. Y. 635, says:

"These cases decide that the officer elected, and who, by the certificate of the proper authority to that effect, is or has become duly qualified to hold office, is the rightful officer, although holding by a defeasible title, when he does not take the oath of office. That omission may work a forfeiture, but unless and until such forfeiture is adjudged he remains the rightful officer, as if he had taken the proper oath."

In this case, as has already been stated, the appointment of Conlin, so far as the action of the commissioners was concerned, was complete on the 9th of August, 1887, and his appointment was prior to that of the relator Williams. He took the oath of office promptly, and did nothing to work a forfeiture, or to defeat his title. It is said, however, that the law does not take notice of the fractions of a day, and that, as the appointments of Conlin and Williams were made at the same meeting of the board of police commissioners, Conlin cannot successfully maintain that his appointment is to be regarded as being prior to that of Williams. In commenting upon this principle of law in the case of Bank v. Burkhardt, 100 U. S. 689, the court says:

"For most purposes the law regards the entire day as an indivisible unity, but when the priority of one legal right over another, depending upon the order of events occurring on the same day, is involved, this rule is necessarily departed from."

In 5 Amer. & Eng. Enc. Law, 90, it is said:

"The general rule, however, that the law admits no fractions of a day, is subject to numerous exceptions. It is generally regarded as a mere fiction, and if, by resort to such fiction, manifest injury and wrong will result, the truth and fact in point of time may always be averred and proved."

In Re Richardson, 2 Story, 571, Judge Story says:

"I am aware that it is often laid down that in law there is no fraction of a day, but this doctrine is true only sub modo, and in a limited sense, where it will promote the right and justice of the case. It is mere legal fiction, and therefore, like all other fictions, is never allowed to operate against the right and justice of the case. On the contrary, the very truth and facts in point of time may always be averred and proved in furtherance of the right and justice of the case, and there may be even a priority in an instant of time, or, in other words, it may have a beginning and an end. * * * Indeed, I know of no case where the doctrine of relation, which is a mere fiction of law, is allowed to prevail, unless it be in furtherance and protection of rights pro bono publico."

Conlin, having the prior appointment, and having taken the oath of office, without any laches on his part, could not be divested of his title by the fact that Williams took the oath of office two hours and ten minutes before he did, it being shown that he was absent from the city on leave. The determination of the commissioners upon that point could not be nullified by the result of a race between the two appointees in taking the official oath.

To recapitulate, I am of the opinion—First, that as the resolution appointing Conlin preceded that appointing Williams, the former is to be regarded as having been selected by the commissioners for the senior inspectorship; second, that Conlin did no act which worked a forfeiture of his appointment, or of the priority accorded to him, by the commissioners, intermediate the passage of the resolution and the taking of the oath of office; third, that the fact that Williams took the oath of office shortly before Conlin, on the same day, does not nullify Conlin's right to be regarded as the senior inspector. For these reasons the motion made by the relator Conlin must be granted, and that of the relator Williams denied.